UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| TEAMSTERS LOCAL UNION NO. 597, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 2:26-cv-281 |
| ST. ALBANS CREAMERY, LLC, DAIRY FARMERS OF AMERICA, INC., | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Teamsters Local Union No. 597 ("Plaintiff") brings this action seeking declaratory and injunctive relief against Defendants St. Albans Creamery, LLC and Dairy Farmers of America, Inc. ("Defendants"). Plaintiff is a labor organization which represents employees at St. Albans Creamery, a subsidiary of Dairy Farmers of America, Inc. Defendants have allegedly announced that they intend to close the St. Albans Creamery and related facilities today, Monday, August 17, 2026, and relocate the work. Pending before the Court is Plaintiff's motion for a temporary restraining order halting that closure. Plaintiff has also filed a Verified Complaint and a Motion for a Preliminary Injunction.

For reasons set forth below, the motion for a temporary restraining order is **granted**.

**Factual Background**

Plaintiff is a labor organization that represents nearly 80 employees at St. Albans Creamery. St. Albans Creamery is a wholly owned, controlled, and operated subsidiary of Defendant Dairy Farmers of America. The employees are represented by Plaintiff for collective bargaining purposes, and their employment is covered by a collective bargaining agreement ("CBA"). The current CBA includes a non-discrimination provision barring Defendants from discriminating against employees for union activity or membership. The CBA also requires binding arbitration for any alleged violations of the agreement.

On June 17, 2026, Defendants issued notice to Plaintiff that they intended to close the St. Albans facility, with the first phase of the closure to occur on August 17, 2026. In response, Plaintiff initiated a grievance under Article 16 of the CBA, claiming that Defendants were retaliating against employees for holding a strike in the fall of 2025. Plaintiff also demanded both effects and decisional bargaining. Plaintiff reports that the parties have engaged in a few bargaining sessions over the effects of the decision, with no resolution to date, and that Defendants have "refused to submit to any decisional bargaining." ECF No. 5 at 10.

Plaintiff claims to have evidence of anti-union animus that led to the announced closure, including statements by plant

supervisors. Plaintiff is also allegedly in possession of an internal corporate memorandum ("Memo") dated October 7, 2025 – the date on which the parties ratified the latest CBA – proposing "idling operations" at the St. Albans facility with the primary goal of "Union Decertification." On August 12, 2026, counsel for Defendants sent a letter to counsel for Plaintiff alleging that the Memo is fake and was created by artificial intelligence. Plaintiff disputes that allegation, and contends that even without the Memo it has sufficient evidence to raise a viable discrimination claim in arbitration.

Plaintiff further claims that Defendants have begun effectuating the closure. The plant has largely ceased processing milk, receiving deliveries, and ordering necessary supplies. Machinery is being dismantled and equipment is being prepared for shipment to other facilities. The Verified Complaint alleges, under oath, that Plaintiff will suffer irreparable harm if the closure is not enjoined "because once it is carried out, it is extremely unlikely that any arbitrator hearing the Union's grievance would or could order the Employer to reopen the facility and restore operations." ECF No. 1 at 8. Plaintiff therefore asks the Court to issue a temporary restraining order requiring Defendants to cease the closure "until grievances can be completely processed and resolved through the contractual dispute resolution procedure." *Id.*

**Discussion**

The Norris-LaGuardia Act, 29 U.S.C. § 101 *et seq.*, "deprives federal courts of the jurisdiction to grant injunctive relief in labor disputes, except in limited circumstances." *Niagara Hooker Emps. Union v. Occidental Chem. Corp.*, 935 F.2d 1370, 1375 (2d Cir. 1991) (citing 29 U.S.C. § 101). One limited exception traces to *Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235 (1970), which allowed a temporary restraining order preventing a union from striking in violation of a no-strike provision in a collective bargaining agreement. *Id.* at 254. The Second Circuit has extended *Boys Markets* to the inverse scenario, known as a "reverse *Boys Markets*" order, allowing "unions to obtain injunctions against employers to preserve the status quo pending arbitration of a labor dispute as long as (1) the underlying dispute is subject to mandatory arbitration; and (2) the injunction is necessary to prevent the arbitration process from becoming a 'hollow formality' or 'meaningless ritual.'" *Aeronautical Indus. Dist. Lodge 91 of Int'l Ass'n of Machinists & Aerospace Workers v. United Techs. Corp.*, 230 F.3d 569, 581 (2d Cir. 2000) (citing *Niagara Hooker*, 935 F.2d at 1377).

Here, Plaintiff submits that the underlying dispute is clearly subject to mandatory arbitration. Based upon the limited record before it, the Court agrees. The CBA bars discrimination

based on union-related activity or membership, and further provides that grievances related to a CBA violation must be resolved in binding arbitration. The first prong is therefore satisfied.

With respect to the "hollow formality" or "meaningless ritual" prong, *Niagara Hooker* held that the arbitration process is "rendered meaningless only if any arbitral award in favor would substantially fail to undo the harm occasioned by the lack of a status quo injunction." 935 F.2d at 1378. The Court cited *Local Lodge No. 1266 v. Panoramic Corp.*, 668 F.2d 276, 283 (7th Cir. 1981), explaining that:

> In *Panoramic*, for example, the Seventh Circuit found that a company's plan to sell a division, if not enjoined, would render the process meaningless by presenting an arbitrator with a *fait accompli*. The purchaser had refused to recognize or bargain with the union, despite provisions in the collective bargaining contract arguably requiring that any purchaser must assume the obligations of the contract. The purchaser announced that it planned to terminate all employees, and any employee wishing to continue employment would have to reapply. The court granted a status quo injunction pending the arbitration of the union's dispute with the seller, reasoning that after the sale, the arbitrator would be left with 'no certain and effective means of remedying the [alleged] breach of contract.'

*Niagara Hooker*, 935 F.2d at 1378 (internal citation omitted).

Plaintiff argues that, in this case, injunctive relief "is necessary to enjoin the threatened closure and relocation pending arbitration in order to prevent the Employer from

effectively vitiating the contracts' dispute resolution mechanism." ECF No. 5 at 15. Again, based upon the limited record before it, the Court agrees. A closure at this time would arguably frustrate the arbitrator's ability to remedy the alleged breach of the collective bargaining agreement. *See Niagara Hooker*, 935 F.2d at 1378. Indeed, even if the arbitrator were to find in Plaintiff's favor on the discrimination claim, there could be no effective remedy since the workers would no longer be employed.[1]

Having found that Plaintiff has cleared the initial hurdle for obtaining "reverse *Boys Markets*" relief, the Court turns to the traditional requirements for obtaining immediate injunctive relief. A temporary restraining order "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable

---

[1] This case, then, is distinguishable from other cases in which the relief requested was not threatening the integrity of the arbitration process itself. *See, e.g.*, *N.Y. State Nurses Ass'n v. Brooklyn Hosp. Ctr.*, No. 26-CV-745(EK)(PCG), 2026 WL 414520, at *3 (E.D.N.Y. Feb. 14, 2026) (finding that a union did not meet the *Niagara Hooker* standard where the relief requested — overdue contributions to a benefit fund for union members that were the subject of a pending arbitration pursuant to the parties' collective bargaining agreement — would not present a *fait accompli*).

harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20; *see also Oeschger v. GeneThera, Inc.*, 395 F. Supp. 3d 345, 355 (D. Vt. 2019) (explaining that the same factors for considering a preliminary injunction apply to temporary restraining orders).

With respect to success on the merits, the Second Circuit has cautioned that "[c]ourts are not to delve into the substantive provisions of . . . a collective bargaining contract, since this would usurp the function of the arbitrator." *Niagara Hooker*, 935 F.2d at 1375. Consequently, Plaintiff only needs to show that its dispute under the CBA "is sufficiently sound to prevent the arbitration from being a futile endeavor." *Panoramic*, 668 F.2d at 284-85; *see also Nursing Home & Hosp. Union No. 434 AFL-CIO-LDIU by Mackson v. Sky Vue Terrace, Inc.*, 759 F.2d 1094, 1098 n.3 (3d Cir. 1985). Here, Plaintiff claims to be in possession of evidence, both spoken and written, to support its claim. While it is the arbitrator who will ultimately determine whether such evidence warrants relief, the Court is satisfied at this stage that Plaintiff will be presenting a non-futile claim.

Irreparable harm occurs when "upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Gov't Emps. Ins. Co. v. Patel*, 166 F.4th

280, 291 (2d Cir. 2026) (citation omitted). In a case such as this, courts often "focus into a single concept the twin ideas of irreparable injury and frustration of arbitration." *Panoramic*, 668 F.2d at 286. As explained above, a failure to award preliminary relief halting a closure would result in the frustration of arbitration, as a Plaintiff's victory at arbitration would ring hollow without a continuing place of employment. *See* ECF No. 5 at 21 ("The Employer does not contest that the closure would strip all employees in the bargaining unit of their livelihoods. . . . And just as the closure, once effectuated, would eviscerate the arbitration process, so too would this loss of employment and extinguishing of the Union be irreversible and irremediable."). The Court therefore finds that Plaintiff has met its burden of showing irreparable harm.

Finally, Plaintiff has described the well-recognized public interest in enforcing contracts, *see* ECF No. 5 at 23 (citing *Bank of Am., N.A. v. Won Sam Yi*, 294 F. Supp. 3d 62, 81 (W.D.N.Y. 2018)), as well as public policy favoring collective bargaining and arbitration of labor disputes, *see* ECF No. 5 at 24 (citing 29 U.S.C. § 151; *1199 SEIU United Healthcare Workers E. v. Chinese-American Planning Council Home Attendant Program*, 182 F.4th 67, 95 (2d Cir. 2026)). The Court finds that the equities of the case, the balance of hardships, and the public interest favor Plaintiff's position.

As mentioned above, there is a specific statute addressing the issuance of injunctions in labor disputes. *See* 29 U.S.C. § 107. The statute generally requires an evidentiary hearing prior to granting a temporary injunction, but also provides that if a complainant alleges "a substantial and irreparable injury" a temporary restraining order "may be issued upon testimony under oath." *Id.* The temporary restraining order "shall be effective for no longer than five days and shall become void at the expiration of said five days." *Id.*

The Court finds that, through the Verified Complaint, Plaintiff has set forth testimony justifying a temporary injunction. Briefly stated, Plaintiff has alleged a claim that, if sustained, falls within the *Niagara Hooker* exception and meets the requirements for a temporary restraining order. The Court therefore grants Plaintiff's motion for a *status quo* temporary restraining order.

## Conclusion

For the reasons set forth above, the motion for a temporary restraining order (ECF No. 2) is **granted**. Defendants shall refrain from and cease implementation of the St. Albans facility closure and take no other action to eliminate or diminish work by the employees represented by Plaintiff. This temporary restraining order is effective for five days, and shall become void at the expiration of said five days. The Court will hold an

evidentiary hearing on the motion for a preliminary injunction on Thursday, August 20, 2026, at a time to be noticed by the Court.

Dated in Burlington, Vermont on this 17th day of August 2026.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Judge